IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | ) | |
|---|---|---|
| Industrial Packaging Supplies, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.1:18-cv-00165 |
| | ) | |
| vs. | ) | Honorable Manish S. Shah |
| | ) | |
| Matthew Channell, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**I.     INTRODUCTION**

Industrial Packaging Supplies, Inc. ("IPS") filed this action based on allegations that constitute little more than pure speculation, in an effort to prevent Mr. Channell from using the knowledge and experience he developed before he ever began working for IPS. Although Plaintiff seeks an injunction on the grounds that it fears that Mr. Channell will successfully solicit its existing customers, IPS cannot establish that it has a protectable interest in these customers, given that, as discussed below, Mr. Channell's relationships with these two customers pre-dates his employment with IPS. Mr. Channell's knowledge and experience in dealing with customers in this region of the country far exceeded that of IPS, which is a company that was not even qualified to do business in Illinois on October 3, 2016, the date the company hired Mr. Channell. *See* Illinois Sec. of State Corporation File Detail Report for IPS, Ex. A (reflecting that IPS currently is not even a corporation in "good standing" in Illinois).

Additionally, Plaintiff elected to terminate Mr. Channell's employment without notice on October 13, 2017. This was barely a year after Mr. Channell had been hired. As reflected in Mr. Channell's attached declaration, Ex. B, Mr. Channell then fully cooperated with IPS's request

that he return all electronic devices and IPS property to IPS. That said, IPS's decision to terminate Mr. Channell rendered his Non-Disclosure, Non-Solicitation, and Non-Competition Agreement ("Agreement") unenforceable for lack of consideration; and Mr. Channell's cooperation with the return of information demonstrates that injunctive relief is not required to protect IPS's trade secrets, to the extent any even exist. In any event, if Plaintiff viewed Mr. Channell to be such a threat to its Illinois customer base, Plaintiff had every opportunity to address its concerns before it unilaterally fired Mr. Channell without notice. For each of these reasons, as discussed in greater detail below, Defendants respectfully request that the Court deny Plaintiff's Motion.

## II. FACTS

As alleged in Plaintiff's verified complaint, IPS hired Mr. Channell after he had been working in a sales capacity in the packaging supply industry for more than five years. IPS had no such market presence in this area, which is why the company hired Mr. Channell. Pl. Cmplt. ¶ 6 ("IPS hired Channell to help establish IPS's presence in the Illinois market."); *see also id*. ¶ 33. IPS is not even registered to do business in the State of Illinois at the moment. See Ex. A.

Before Mr. Channell ever worked for IPS, he developed contacts with approximately 20-30 business prospects in this area, which he brought with him to IPS. Channell Decl., Ex. B, ¶ 5. At the time he was hired, IPS had no significant customer base in Illinois, and Mr. Channell's own pre-existing network was the most significant source of business opportunities. Pl. Cmplt. ¶ 6, 33; Channell Decl., Ex. B., ¶ 6. Indeed, the only two actual customers that IPS has in Mr. Channell's Chicago area territory are both businesses that Mr. Channell had been dealing with before he ever began working for IPS. Channell Decl., Ex. B, ¶ 8. One of these customers employs Mr. Channell's uncle. *Id*.

IPS is in the business of distributing packaging materials. Pl. Cmplt. ¶ 3. Hundreds of companies provide the same services and sell the same products and materials as IPS. *See* Declaration of G. Davidson, attached as Ex. C, ¶ 3; *see also* Channell Decl., Ex. B., ¶ 2. Because IPS is a distributor, it necessarily is selling products that were designed and manufactured by other entities – IPS is primarily a middleman. *See* IPS "About Us" description, attached as Ex. D. Plaintiff hired Mr. Channell on October 3, 2016. Pl. Cmplt., ¶ 33. IPS did not provide Mr. Channell with any additional consideration at the time he signed the Agreement. *See* Agreement, Pl. Cmplt., Ex A, ¶ 15 ("[C]onsideration in the form of initial employment as Outside Sales Rep has been provided to him in exchange for his execution of this Agreement."). After he was hired by IPS, Mr. Channell continued to focus much of his sales efforts on the 20-30 contacts that he had developed before he began working for IPS, as IPS only provided him with possibly an additional 10-12 prospects or leads. Channell Decl., Ex. B, ¶ 8.

On October 13, 2017, Plaintiff terminated Plaintiff's employment without notice, based on its perception that Mr. Channell was not sufficiently engaged in his sales efforts in the territory. Pl. Cmplt., ¶ 71. Almost immediately after his employment ended, Mr. Channell provided a Federal Express courier (who arrived at his door unannounced) with all of the computer equipment and electronic devices that belonged to IPS. Channell Decl., Ex. B, ¶ 10. Mr. Channell did not retain access to electronic files or records of IPS's business, and he discarded any remaining paper documents, including, for example, IPS forms. *Id*., ¶¶ 10, 17.

After IPS terminated Mr. Channell's employment, Mr. Channell contacted John England, who was working for Axis, for help in finding a job. *Id*., ¶ 11. Mr. England suggested that Mr. Channell contact Mr. Davidson of Axis. *Id*. Although Axis was a new company, Mr. Davidson had prior experience in running his own packaging business, as he started and sold a packaging

business to IPS. Davidson Decl., Ex. C, ¶ 2. Mr. Davidson has now returned to the industry, bringing his experience, industry knowledge, and contacts. *Id*.

After Mr. Channell began working for Axis, Mr. Channell spoke to an outside attorney who represented IPS and received a letter from that attorney dated November 17, 2017. Channell Decl., Ex. B, ¶ 13. IPS's letter to Mr. Channell did not ask him to return any additional documents, information, or property, or otherwise advise Mr. Channell that IPS believed that he was in physical possession of anything containing the company's confidential information or trade secrets. *See* Pl. Cmplt., Ex G. IPS's letter also did not advise Mr. Channell that IPS believed Mr. Channell had contacted IPS customers after he had been fired. As requested by IPS's attorney, Mr. Channell returned a signed copy of the letter on November 29, 2017, along with a certification stating that he would not use or disclose IPS's confidential information or trade secrets. Channell Decl., Ex. B, ¶ 14 and Exhibit A thereto. IPS did not respond to Mr. Channell until it filed this lawsuit.

Since commencing work for Axis, Mr. Channell has been careful to avoid impairing IPS's customer base. Axis informed Mr. Channell, and Mr. Channell has understood, that Axis has no interest in IPS's confidential information or trade secrets. Channell Decl., Ex. B, ¶¶ 12, 14; Davidson Decl., Ex. C, ¶ 6. Axis has confirmed that the only person who Mr. Channell has contacted at an IPS customer was Mr. Channell's own uncle. Davidson Decl., Ex. C, ¶ 7. Indeed, in the one instance where one of Mr. Channell's customers at IPS contacted him at Axis, Mr. Channell directed the customer to work and coordinate with IPS. Channell Decl., Ex. B, ¶ 16; Davidson Decl., Ex. C, ¶ 6. .

4837-6454-2556.v2

## III.     ARGUMENT

### A.     Elements For A Preliminary Injunction

In the Seventh Circuit, the standards for a temporary restraining order and a preliminary injunction are virtually identical. *Harder v. Village of Forest Park*, No. 05 C 5800, 2005 WL 3078096, *1 (N.D. Ill. Nov. 14, 2005). IPS, as the party seeking the preliminary injunction, must show: (1) it has a reasonable likelihood of success on the merits of the underlying claim; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the temporary restraining order or preliminary injunction is denied. *Anderson v. U.S.F. Logistics*, 274 F.3d 470, 474-75 (7th Cir. 2001); *Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1014-15 (7th Cir. 1990). Failure to establish ***any one*** of these elements is sufficient to deny a motion for a preliminary injunction. *Abbott Lab. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992); *Somerset House*, 900 F.2d at 1015. If the Court is satisfied that these three conditions have been met, it must consider whether the irreparable harm the applicant will suffer without injunctive relief outweighs the harm the opposing party will suffer if the preliminary injunction is granted. *Id.* In addition, the Court must determine whether the preliminary injunction will harm the public interest. *Id.*

This Court should further note that, in this case, Plaintiff's requested injunction goes well beyond merely seeking to preserve the current *status quo ante*, as Plaintiff's request for relief asks that this Court enter an Order: (a) requiring Defendants to provide to IPS and to destroy any information that Defendants may possess relating to businesses that may be IPS customers, distributors, or suppliers; (b) requiring Defendants to identify customers that either of the Defendants may have solicited, irrespective of when such contact may have even occurred; (c) requiring Defendants to identify any disclosures of IPS's purported trade secrets; (d) prohibiting Defendants from conducting any competitive business anywhere in the State of Illinois;

5

(e) prohibiting Mr. Channell from selling competitive products to any entity with which Mr. Channell had any contact while he was employed by Plaintiff; and (f) directing Defendants to pay Plaintiff's attorneys' fees. Pl. MOL, Dkt. No. 6, at 19-20.

Interlocutory mandatory injunctions, such as the one requested by Plaintiff, are very "rarely issued" and should not be issued "except upon the clearest equitable grounds." *See; e.g. DSM Desotech, Inc. v. Corning Inc.*, No. 14 CV 8111, 2014 U.S. Dist. LEXIS 186315, at *10 (N.D. Ill. Dec. 30, 2014) ("[T]he requested injunction would command the defendant to take particular actions, and such an injunction should be cautiously viewed and sparingly issued."); *Choice Parts, LLC v. GMC*, 203 F. Supp. 2d 905, 914 (N.D. Ill. 2002), quoting, *W.A. Mack v. Gen. Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958); *see also PrimeSource Bldg. Prods. v. Huttig Bldg. Prods*, Nos. 16 CV 11390, 16 CV 11468, 2017 U.S. Dist. LEXIS 202748, at *95 (N.D. Ill. Dec. 9, 2017) (requested injunction order "shutting down" the defendant's business was "wildly out of line"…). Even after the parties complete a trial on the merits, such relief is "extraordinarily 'rare.'" *Choice Parts*, at 914, quoting, *In re Brand Name Prescription Drug Antitrust Litig.*, 123 F.3d 599, 610 (7th Cir. 1990).

### B. Illinois Law Requires That A Restrictive Covenant Must Be Reasonably Necessary to Protect a Legitimate Business Interest of the Employer

Illinois courts disfavor and closely scrutinize restrictive covenants because they are "repugnant to the public policy encouraging an open and competitive market place." *Roberge v. Qualitek Int'l, Inc.*, 2002 U.S. Dist. LEXIS 1217, at *4 (N.D. Ill. Jan. 28, 2002). To evaluate whether a restrictive covenant is enforceable, the Illinois Supreme Court established a three-part reasonableness test in *Reliable Fire Equipment Co. v. Arrendondo*, 2011 IL 111871, ¶ 17, 965 N.E.2d 393, 396 (2011). To be enforceable, the covenant must: (1) be no greater than is required to protect a legitimate business interest of the employer, (2) not impose undue hardship on the

employee, and (3) not be injurious to the public. *Id.* Even where a legitimate business interest exists, it may be limited by the type of activity, geographic area, and time. *Id*. Factors to be considered in determining whether an employer has a protectable, legitimate interest "include, but are not limited to, the near-permanence of customer relationships, the employee's acquisition of confidential information through his employment, and time and place restrictions." *Reliable Fire Equip. Co.*, 2011 IL 111871, ¶ 43, 965 N.E.2d at 403.

Restrictive covenants must be narrowly tailored so as to only protect the legitimate business interest of the employer. *Outsource Int'l, Inc. v. Barton*, 192 F.3d 662, 669 (7th Cir. 1999); *Lawrence and Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 292 Ill. App.3d 131, 138 (2nd Dist. 1997). A restrictive covenant should not be enforced in a manner that will deprive the employee with an "opportunity to pursue an occupation and thereby support his or her family" *Reliable Fire Equip. Co.*, 2011 IL 111871, ¶ 16, 965 N.E.2d at 396.

Moreover, where an employer seeks to enforce a customer non-solicitation covenant, the restriction must be limited to protecting only those customers that the employee was introduced to or learned about as a result of having been employed with the plaintiff. *Eichmann v. Nat'l. Hosp. & Health Care Svs., Inc.*, 308 Ill. App.3d 337, 345 (1st Dist. 1999). When an employee continues to do business with his pre-existing customer contacts, those continuing business relationships do not create a protectable interest for the employer. *See Gastroenterology Consultants v. Meiselman*, 2013 IL App (1st) 123692, ¶ 14, 989 N.E.2d 1126, 1130-31 (1st Dist. 2013) (plaintiff had no protectable interest in defendant's patient relationships).

  **C.**  **Elements Necessary To Establish The Misappropriation Of A Trade Secret**

To succeed on its claim for the misappropriation of a trade secret, IPS must prove that the information given to Channell was: (1) a trade secret; (2) misappropriated; and (3) used by Channell. *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265-66 (7th

7

Cir. 1992). It is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated: "The plaintiff must show concrete secrets." *Automed Tech., Inc. v. Eller*, 160 F.Supp.2d 915, 920 (N.D. Ill. 2001). Courts will recognize the existence of a trade secret only "where an employer has invested substantial time, money, and effort to obtain a secret advantage…" *Stenstrom Petroleum Servs. Grp., Inc. v. Mesch*, 375 Ill. App. 3d 1077, 1091, 874 N.E.2d 959, 972 (2007).

Where an employer fails to allege, or simply cannot allege in good faith, that a defendant actually used its claimed trade secrets, that employer frequently attempts to invoke the "inevitable disclosure" doctrine, *e.g.*, an argument that a former employee will inevitably use the former employer's trade secrets in his new job because the employee will otherwise be incapable of performing the job. *See Pepsico, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995). However, even under this doctrine, the complaint must do more than make blanket conclusory allegations that an employee will necessarily use trade secrets in his/her new position. *Automed Technologies*, *Id.* at 921; *Liebert Corp. v. Zonatherm Products, Inc.*, 357 Ill. App.3d 265, 284 (1st Dist. 2005); *Stenstrom*, 375 Ill. App.3d at 1096. The type of additional allegations/facts that the courts have recognized as supporting an inevitable disclosure claim include:

- A former employee's lack of forthrightness, making out and out lies to his former employer and engaging in specific head-to-head competition. *Pepsico, Inc. v. Redmond*, 54 F.3d at 1271.

- Where a party has deliberately destroyed evidence. *Liebert Corp.*, 357 Ill.App.3d at 286; citing *R.J. Management Co. v. RSLV Development Corp.*, 346 Ill.App.3d 957, 965 (2nd Dist. 2004).

Other recognized circumstances which support a trade secret claim may include instances where a former employee has defragmented his computer on multiple occasions and deleted thousands of pages of data from his computer and then in fact used trade secrets on behalf of his former employer. *RKI, Inc. v. Grimes*, 200 F.Supp.2d 916 (N.D. Ill. 2002).

8

4837-6454-2556.v2

On the other hand, where there is no such evidence of misdeeds by the former employee, such as where the former employee returned all computer files that he possessed and he did not retain any copies of those files, an employer fails to raise a fair question as to the existence of an inadequate legal remedy or irreparable harm in the context of a trade secret claim. *Stenstrom Petroleum Services Grp.*, 375 Ill. App.3d at 1096. Further, an employer's naked "fear" that its trade secrets may be used by a former employee is insufficient to support an injunction based on the inevitable disclosure doctrine. *Triumph Packaging Group, Inc. v. Ward*, 834 F. Supp. 2d 796, 806 (N.D. Ill. 2011). "To protect against that broad application, the plaintiff must do more than show that a former employee went to a direct competitor to do the same job and demonstrate more than a fear that the former employee will disclose trade secrets." *PrimeSource Bldg. Prods. v. Huttig Bldg. Prods.*, Nos. 16 CV 11390, 16 CV 11468, 2017 U.S. Dist. LEXIS 202748 at *58 (N.D. Ill. Dec. 9, 2017).

### D. IPS Does Not Have A Reasonable Probability Of Success On The Merits

#### 1. Because IPS's Complaint is Premised Primarily on Allegations Based on "Information and Belief" it is not Entitled to Injunctive Relief

As referenced above, IPS's allegations of purported wrongdoing, or future wrongdoing, by Mr. Channell, are based, not on specific facts, but rather on unidentified "information and belief." Such allegations are insufficient for purposes of receiving injunctive relief. *Kinney v. Federal Security, Inc.*, 2001 U.S. Dist. LEXIS 2301 *2, n. 2 (N.D. Ill March 6, 2001); *MacLean-Fogg Co. v. Edge Composites, L.L.C.*, 2009 U.S. Dist LEXIS 31267 *16 (N.D. Ill. April 14, 2009) (allegations made on "information and belief" that former employee disclosed trade secrets insufficient to state a claim under the Illinois Trade Secrets Act.). Moreover, this Court should recognize that the customer information that Plaintiff claims as its alleged trade secrets involves relationships that Mr. Channell had been developing for years before he was hired by

9

IPS, which suggests that the alleged "trade secrets", if they exist, belong to Mr. Channell and not IPS. *See* Channell Decl., Ex. B, ¶¶ 4-8. IPS cannot credibly claim to have invested substantial time or resources in developing customer relationships in Illinois, as IPS has only been doing business in this State since October of 2016. *See* Ex. A. Aside from the defective nature of IPS's allegations, this Court should also recognize that IPS has failed to put forth any evidence or specific verified assertions that the identities of its customers are secret, that buyers of packaging materials and IPS's products are difficult to identify, of any impermissible disclosure or threat of disclosure. For these reasons, IPS cannot prevail on its motion, as it has no likelihood of success where its allegations of inappropriate activity by Mr. Channell are nothing more than unsupported speculation.

### 2. Breach of Contract Claim

IPS has no reasonable likelihood of success on the merits of its breach of contract claim. As reflected in Defendants' pending Motion to Dismiss, Plaintiff rendered the consideration for Mr. Channell's Agreement illusory and effectively voided the Agreement by electing to terminate his employment before Plaintiff employed Mr. Channell for a substantial period of time, which has been deemed to be a period of 24 months in Illinois. *See, e.g.*, *Fifield v. Premier Rheumatology Assocs.*, 2013 IL App. (1st) 120327, ¶ 19, 993 N.E. 2d 938, 943; *McInnis*, 2015 IL App (1st) 142644, ¶ 27, 35 N.E.3d 1076, 1083 ("[C]ontinued employment for two years or more constitutes adequate consideration…"); *Brown & Brown, Inc. v. Mudron*, 379 Ill. App. 3d 724, 728–29, 887 N.E.2d 437, 440 (2008) ("Illinois courts have generally held that two years or more of continued employment constitutes adequate consideration."). Because Plaintiff failed to employ Mr. Channell for a "substantial period of time," the company's actions created an "irrebuttable presumption" that "the consideration for the covenant was illusory." *See Curtis*

*1000, Inc. v. Suess*, 24 F.3d 941, 946 (7th Cir. 1994).[1] This Court should also note that Plaintiff unreasonably seeks to bar Mr. Channell from working in the State of Illinois for a period of 18 months, despite the fact that IPS, without notice, terminated Mr. Channell's employment after roughly 12 months. *See AssuredPartners, Inc. v. Schmitt*, 2015 IL App (1st) 141863, at ¶ 36 (noting that non-compete restriction of 28 months was unreasonable because the defendant only had been employed for 20 months).

Moreover, Plaintiff is not likely to prevail on its claims relating to the customer non-solicitation provisions in the Agreement. Plaintiff's attempt to restrict Mr. Channell's ability to do business with Plaintiff's customers is patently unreasonable given that Plaintiff has no "near-permanent" customers within Mr. Channell's territory. The company only started doing business in Illinois in October of 2016 (Ex. A). It did not establish any customers in this State until after that date. Its relationships with Illinois businesses, to the extent that they exist, are all new, and are not "near-permanent." Further, because IPS has only established customer relationships with entities that Mr. Channell brought to IPS based on his own prior interactions, IPS cannot establish that "but for" its hiring of him, Mr. Channell would not have had contact with these businesses. IPS can hardly claim to have introduced Mr. Channell to his own uncle, for example. Illinois law does not allow IPS to prevent Mr. Channell from continuing to solicit and do business with entities that Mr. Channell had been soliciting and interacting with before IPS hired Mr. Channell. *See Gastroenterology Consultants*, 2013 IL App (1st) 123692, ¶ 14, 989 N.E.2d 1126, 1130-31; *Eichmann*, 308 Ill. App.3d at 345. The Agreement is an overreach on the part of

---

[1] As Defendants established in their pending Motion to Dismiss, no Illinois appellate or federal court has applied the *Fifield* rule in the context of the employer having terminated the employment relationship. Nevertheless, the concerns raised by the Seventh Circuit in *Curtis 1000* apply, as Plaintiff contends that the customer relationships Mr. Channell developed over the course of five and one half years prior to his hiring by IPS now constitute an IPS-owed "trade secret" in the form of a customer list (of two customers) and claims a superior interest over Mr. Channell in maintaining these relationships. Plaintiff's positions in this action are consistent with the reasons why Illinois courts abhor non-compete agreements.

11

IPS, as the company did not have a presence in Illinois before Mr. Channell landed the company customers from within his own network. Mr. Channell is well within his rights to maintain these relationships, and should be encouraged to do so.

In addition, this Court should note that Plaintiff's request for an injunction rests upon a facially overbroad confidentiality provision. Mr. Channell's Agreement defines confidential information to mean "data and information" that relates to "the Business of the Company" that Mr. Channell had disclosed to him "as a consequence of his relationship with the Company," that the Company deems to have value and which is not known to competitors. Agreement, Pl. Cmplt., Ex. A, ¶ 1.c. Illinois courts do not allow an employer to define "confidential information" to cover any information relating to its business. *See, e.g.*, *AssuredPartners, Inc. v. Schmitt*, 2015 IL App (1st) 141863, at ¶ 46; *see also Carlson Grp., Inc. v. Davenport*, No. 16-cv-10520, 2016 U.S. Dist. LEXIS 171915, at *12-13 (N.D. Ill. Dec. 13, 2016) (rejecting enforceability of similarly broad confidentiality provision). The confidentiality provision in Mr. Channell's Agreement is particularly overreaching and inappropriate, as Mr. Channell had over five years of experience before his brief employment stint with IPS. IPS's definition of "confidential information" effectively handcuffs Mr. Channell based on the possibility that he received information that falls into the sweeping definition of confidential information, but was otherwise well known to him based on his years of prior work experience. Under the circumstances, Plaintiff cannot demonstrate a likelihood of prevailing on the merits of its claims.

  **3.** **IPS's Claim for Threatened Misappropriation of Trade Secrets, Based on the "Inevitable Disclosure" Theory, is not Supported by Law or Fact**

As a threshold matter in this case, there is no support that Channell has engaged, or threatened to engage, in any act in direct competition with IPS. Given that Plaintiff's supporting verified pleading is nearly entirely based on allegations made "on information and belief,"

12

Plaintiff has failed to provide this Court with a plausible basis to find that trade secret misappropriation has occurred. *See Maclean-Fogg Co. v. Edge Composites, L.L.C.*, No. CIV.A. 08 C 6367, 2009 WL 1010426, at *6 (N.D. Ill. Apr. 14, 2009) (plaintiffs failed to state a claim of trade secret misappropriation where they failed to allege any facts providing a reason why they believed defendants were using their trade secrets). When, as is the case here, an employer lacks actual evidence of misappropriation or threatened misappropriation, the employer often relies on the "inevitable disclosure" theory to support a misappropriation of trade secrets claim. *See generally Pepsico, Liebert Corp., Automated Technologies*.

In this case, Plaintiff cannot establish a basis for the inevitable disclosure doctrine to apply. Mr. Channell previously worked in this territory in the same industry for more than five years before IPS decided to open a Chicago branch, and he can continue to develop business in Illinois regardless of whether he learned anything of value during his brief relationship with IPS. Moreover, Mr. Channell fully cooperated with IPS in promptly returning his former employer's property and had previously advised IPS that he is not in possession of IPS's information (more than a month before IPS filed suit). Axis has also taken steps to prevent Mr. Channell from making use of IPS trade secrets, whatever they may be (if anything). Against this backdrop, it should come as no surprise that IPS has nothing more than its speculative allegations made only on "information and belief" to support its claims.

> **E. IPS Cannot Establish Either Irreparable Harm Or That It Lacks An Adequate Remedy At Law**

The Complaint fails to adequately allege that IPS has been or will be harmed in any fashion, let alone that IPS has suffered, or will suffer, irreparable harm for purposes of its motion seeking injunctive relief. In an action seeking injunctive relief, where a plaintiff fails to identify inappropriate actions by a former employee creating an inference of future harm, the plaintiff

13

4837-6454-2556.v2

fails to raise a fair question as to an inadequate legal remedy or irreparable harm. See *Stenstrom Petroleum*, 375 Ill. App.3d at 1098 (former employee having returned all company computer files and not retaining copies, together with employer not having lost any customers, justified denial of injunctive relief). Additionally, in this case, Plaintiff had only two customers in the Illinois, and can readily calculate monetary damages if it turns out that Mr. Channell improperly impaired Plaintiff's relationships with these businesses.

### F. The Balance Of Harm Weighs In Favor Of Denying A Preliminary Injunction

In determining whether to award injunctive relief, it is appropriate for the Court to balance the harms to each of the parties. *Allison v. CRC Ins. Svcs, Inc.*, 2010 U.S. Dist. LEXIS 61015 (N.D. Ill. June 21, 2010). In this case, IPS would not suffer any harm in the event its request for injunctive relief is denied. At this point, there is no credible evidence to support a claim that Channell has solicited IPS customers or has misappropriated, or threatened to misappropriate, any trade secrets belonging to IPS (if any), or impaired the limited number of customer relationships that IPS has in this State. The Agreement at issue is over-broad and was not supported by adequate consideration, making it an illegal, naked restraint on trade and harmful to the public's interest. S*ee Carlson Grp., Inc.*, 2016 U.S. Dist. LEXIS 171915, at *23-24 (public interest is enforcing only reasonable agreements). Similarly, Mr. Channell would be unduly harmed if IPS prevailed in its efforts to prevent Mr. Channell from benefitting from the time he spent cultivating business relationships in Illinois long before he was summarily fired by IPS. *See Gastroenterology Consultants*, 2013 IL App (1st) 123692, ¶ 14, 989 N.E.2d 1126, 1130-31; *Eichmann*, 308 Ill. App.3d at 345. Under these circumstances, a denial of IPS's request for a preliminary injunction would not cause it any harm whatsoever. *See Medline Indus., Inc. v Grubb*, 670 F. Supp 831 (N.D. Ill. 1987) (balance of hardships favored former employee where

14

former employer chose to rely on speculation, conjecture and the mere possibility that the defendant would use information).

Plaintiff's request to, among other remedies, bar Mr. Channell from even working in this business within the State of Illinois is the most extreme harm possible in the employment context. This harm clearly outweighs any possible harm to IPS, which has not asserted <u>any</u> legitimate harm, relying instead on vague allegations, speculation, and as few factual assertions not made "on information and belief" as conceivably possible.

**IV.　CONCLUSION**

WHEREFORE, for the above stated reasons, Defendants, Matthew Channell and Axis Packaging, LLC, respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction in its entirety.

Dated:　February 8, 2018　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　By: s:/　*Peter J. Gillespie*
　　　　　　　　　　　　　　　　　　　　　　　　　One of the Attorneys for Defendants
　　　　　　　　　　　　　　　　　　　　　　　　　MATTHEW CHANNELL and
　　　　　　　　　　　　　　　　　　　　　　　　　AXIS PACKAGING, LLC

Peter J. Gillespie
pgillespie@lanermuchin.com
James J. Convery
jconvery@lanermuchin.com
Laner Muchin, Ltd.
515 North State Street, Suite 2800
Chicago, Illinois 60654
(312) 467-9800 (phone)
(312) 467-9479 (fax)

4837-6454-2556.v2

## CERTIFICATE OF SERVICE

I, Peter J. Gillespie, an attorney, hereby certify that on February 8, 2018, I caused to be served a copy of the foregoing, in the above-captioned matter to be filed with the Clerk of the District Court and served on the parties of record by operation of the Court's CM/ECF electronic filing system.

/s/ *Peter J. Gillespie*

4845-4889-6270, v. 1

4837-6454-2556.v2