| | |
|---|---|
| INDUSTRIAL PACKAGING SUPPLIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> MATTHEW CHANNELL and AXIS PACKAGING, LLC, <br><br> Defendants. | No. 18 CV 165 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Defendant Matthew Channell worked for plaintiff Industrial Packaging Supplies as a sales representative. After Industrial Packaging terminated his employment, Channell went to work for a competitor, defendant Axis Packaging. Industrial Packaging now brings claims—seeking injunctive relief and damages—against Channell and Axis. Industrial Packaging alleges that both Channell and Axis misappropriated its trade secrets, Channell breached his employment contract, Axis tortuously interfered with that contract, and Channell breached his duty of loyalty. Defendants move to dismiss. For the following reasons their motion is granted in part, denied in part.

**I.  Legal Standards**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's

favor, but the court need not accept legal conclusions or conclusory allegations. *Id*. at 678–79.

## II. Background

Industrial Packaging hired Matthew Channell as a sales representative in Chicago in October 2016. [1] ¶¶ 3, 6.[1] Throughout his employment, Industrial Packaging provided Channell with training, support, and assistance to generate business and service new customers. *Id*. ¶ 7. Channell worked closely with John England, the Division Sales Manager, to help establish Industrial Packaging's presence in the Illinois market. *Id*. ¶¶ 38–39. Through their roles, both Channell and England had extensive knowledge of Industrial Packaging's business activities, customers, and related proprietary information. *Id*. ¶ 40. Channell had access to Industrial Packaging's confidential information and trade secrets, including its customers' identities, contact information, business and product needs, purchasing history, and profit margins—as well as access to Industrial Packaging's internal business metrics, profit and loss responsibility, and proprietary designs. *Id*. ¶¶ 41, 43, 104. This information was not public, and Industrial Packaging took measures to keep it secret, making it available only to key employees and requiring employees to use password-protected computer systems. *Id*. ¶¶ 105–06.

Industrial Packaging required its employees to sign a nondisclosure, nonsolicitation, and noncompetition agreement. *Id*. ¶¶ 9, 53, 56. In signing his agreement, Channell agreed not to use or disclose Industrial Packaging's

---

[1] Bracketed numbers refer to entries on the district court docket.

confidential, proprietary, and trade secret information, including the company's "methods of operation, names and contact information of customers and potential customers, information related to customers and potential customers (including business needs, purchasing history, costs, profit margins, etc.), price lists, profit margins, financial information and projections, route books, personnel data, and similar information" for eighteen months after his termination. *Id.* ¶ 46. Channell also promised, in Section 2 of the agreement, to refrain from soliciting Industrial Packaging customers for eighteen months after his termination. *Id.* ¶¶ 47–48; [1-1] at 3. Section 5 of the agreement prohibited Channell from engaging in activities that were competitive with Industrial Packaging in a similar employment capacity anywhere in Illinois. [1] ¶ 49. Industrial Packaging fully performed its contractual obligations to Channell. *Id.* ¶ 134.

Like Channell, England and his manager at Industrial Packaging, Geordy Davidson, signed similar agreements. *Id.* ¶¶ 45, 53, 56. On April 17, 2017, after resigning from Industrial Packaging but before his agreement had expired, Davidson established DBE Solutions, which offered packaging and other similar services. *Id.* ¶¶ 57–59, 61. The next day, England resigned from Industrial Packaging and at some point thereafter began working for DBE. *Id.* ¶¶ 55–57. In September, England visited one of Industrial Packaging's California clients on behalf of DBE. *Id.* ¶¶ 63, 66. Davidson had worked with this customer while he was employed with Industrial Packaging. *Id.* ¶ 64. Davidson formed Axis, a commonly owned and controlled affiliate of DBE, one month after that meeting, in October

2017. *Id.* ¶¶ 61–69. Like Industrial Packaging, Axis sold industrial packaging supplies. *Id.* ¶ 3. Davidson served as the president of Axis, and England was the general manager. *Id.* ¶¶ 70–71. After the California-client meeting, DBE or Axis began to sell packaging to that customer. *Id.* ¶ 67.

In the meantime, Channell became disengaged from his sales efforts at Industrial Packaging, and Industrial Packaging terminated his employment on October 13, 2017. *Id.* ¶¶ 14, 72. Channell began working for Axis as a sales representative in November 2017.[2] *Id.* ¶¶ 15, 73–75.[3]

### III. Analysis

Industrial Packaging brings claims for trade secret misappropriation against both Channell and Axis and a claim for breach of duty of loyalty against Channell. It also brings a claim for breach of contract against Channell and one for tortious interference with contract against Axis.

---

[2] Industrial Packaging both alleges that Channell began working for Axis in November 2017—citing Channell's LinkedIn page, *id.* ¶ 73—and that it suspects that he may have started working with Axis before he was terminated from Industrial Packaging. *Id.* ¶ 75. Though facts are viewed in the light most favorable to the nonmoving party, Industrial Packaging's unsupported suspicion that Channell was working with Axis while he was employed at Industrial Packaging need not be taken as true.

[3] Industrial Packaging also alleges the following upon information and belief: Axis founders England and Davidson pursued Channell to join Axis prior to his termination and may have directed him to remove and retain Industrial Packaging's confidential information and trade secrets. *Id.* ¶ 16. Channell misappropriated its trade secrets while he was still employed. *Id.* ¶¶ 83, 110. While later working for Axis, Channell solicited Industrial Packaging clients using Industrial Packaging's customer lists and confidential information, shared that information with other Axis employees, and Axis used this knowledge of Industrial Packaging's customers to compete unfairly in the marketplace. *Id.* ¶¶ 19, 82–84. Davidson used confidential information to set up England's meeting with Industrial Packaging's California customer and later used the profits from that venture to formally establish Axis. *Id.* ¶¶ 65, 68. Finally, Industrial Packaging also makes the conclusory allegation that Axis was fully aware of and condoned Channell's misconduct. *Id.* ¶ 87. For the reasons discussed below, these allegations need not be accepted as true.

4

## A. Trade Secret Misappropriation

The Defend Trade Secrets Act and the Illinois Trade Secrets Act prohibit the misappropriation of trade secrets. 18 U.S.C. § 1836(b)(3); 765 ILCS 1065/3–4. Misappropriation includes acquisition of a trade secret by improper means and disclosure or use of a trade secret without express or implied consent. 18 U.S.C. § 1839(5); 765 ILCS 1065/2(b). Improper means includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6); *see also* 765 ILCS 1065/2(a) (using a similar definition).

Channell and Axis argue that Industrial Packaging has not alleged that they improperly acquired its trade secrets or that they have used or disclosed any of its trade secrets. I agree. Though it makes conclusory allegations and assertions prefaced with "upon information and belief," Industrial Packaging has not alleged any facts to support its contention that defendants misappropriated its trade secrets. A complaint may make allegations upon information and belief where the facts are inaccessible to the plaintiff, but it must also plead reasonable grounds for its suspicions. *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683–84 (7th Cir. 1992). Industrial Packaging alleges, on information and belief, that Axis pursued Channell prior to his termination, that it may have directed him to remove its trade secrets and confidential information, that Channell did so, and that he then used that information while working at Axis to attract customers. But Industrial Packaging does not explain why this information is unavailable to it, nor

does it plead reasonable grounds for its suspicions. Industrial Packaging has alleged that Channell and other Axis employees used to work at Industrial Packaging, where they had access to its trade secrets and that Axis offers the same services and targets the same clients as Industrial Packaging. But this is not enough to justify its otherwise unsupported suspicions that the defendants used or disclosed the information they had access to while working for Industrial Packaging.[4]

Industrial Packaging has also failed to allege that defendants improperly acquired its trade secrets. Although Industrial Packaging repeatedly asserts that Channell had access to its trade secrets in the course of his employment, it argues in its response brief that Channell acquired its trade secrets through improper means. Industrial Packaging alleges in its complaint that Channell inexplicably lost interest in his work in the time leading up to his termination and that it suspects this was because Channell was already planning to join Axis. As support, Industrial Packaging points to the fact that Channell had worked with England in the past and reached out to him to get a job at Axis after his termination. This, Industrial Packaging argues, shows that even though Channell was lawfully employed by Industrial Packaging when he acquired the trade secrets, he was secretly working for Axis and so actually obtained the trade secrets through improper means. But the complaint, as it is currently pled, does not support this contention. Instead, it

---

[4] Industrial Packaging's allegation that England, on behalf of DBE, met with one of Industrial Packaging's customers—and that Davidson used Industrial Packaging's trade secret to set up that meeting—is not attributable to Channell or Axis. Indeed, Axis did not exist at that time. [1] ¶¶ 63, 68–69.

6

clearly alleges that Industrial Packaging intentionally provided Channell with access to its trade secrets because they were necessary for him to do his job. Industrial Packaging's suspicion that Channell had ulterior motives need not be accepted as true. And its allegations that Channell knew England and lost interest in his work toward the end of his employment do not mean that Channell acquired secrets improperly, because Industrial Packaging still authorized Channell's employment.

In addition to wrongful acquisition or use of a trade secret, both the DTSA and ITSA also prohibit threatened misappropriation. 18 U.S.C. § 1836(b)(3)(A); 765 ILCS 1065/3(a). Defendants have not moved to dismiss Industrial Packaging's claims for threatened misappropriation, but a district court may dismiss a claim sua sponte so long as there is a sufficient basis for the court's action apparent from the pleadings. *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987); *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588 n. 3. (7th Cir. 2016).

A plaintiff can state a claim for threatened misappropriation by alleging that the defendant in fact threatened to use plaintiff's trade secret or by alleging that he will inevitably use them by virtue of his new position. *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1268 (7th Cir. 1995). Industrial Packaging does not allege that either Axis or Channell explicitly threatened to use its trade secrets. Nor does it allege facts that would support a claim based on inevitable disclosure. "[T]he mere fact that a person assumed a similar position at a competitor does not, without more, make it 'inevitable that he will use or disclose . . . trade secret information.'" *Id.* at

1269 (quoting *AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1207 (7th Cir. 1987)). Nothing in Industrial Packaging's complaint regarding the nature of the trade secrets or the level of competition between the two companies indicates that Channell's employment with Axis would inevitably lead him to disclose its trade secrets. Channell could avoid using Industrial Packaging's trade secrets by simply not targeting Industrial Packaging clients and not using its proprietary designs, products, or processes. *See PepsiCo*, 54 F.3d at 1269 (finding inevitable use where an employee would need "an uncanny ability to compartmentalize information" to avoid using his old employer's trade secrets). Additionally, since Industrial Packaging filed its complaint, Axis and Channell have informed the court that Channell is no longer employed at Axis, further minimizing the likelihood that Channell will inevitably use Industrial Packaging's trade secrets in the future. Because dismissal is without prejudice and Industrial Packaging has the opportunity to cure any deficiencies with an amended complaint, dismissing its claims for threatened misappropriation sua sponte at this stage is appropriate.

### B. Breach of Contract

In Illinois, the elements for a breach of contract claim are: (1) a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach of contract by the defendant, and (4) resultant damages to the plaintiff. *W.W. Vincent and Co. v. First Colony Life Ins. Co.*, 351 Ill.App.3d 752, 759 (1st Dist. 2004). Channell moves to dismiss Industrial Packaging's breach of contract claim, arguing that it has failed to allege a valid and enforceable contract because the agreement

was not supported by adequate consideration. Though courts generally refuse to evaluate the adequacy of consideration, because an at-will employer can terminate the employment relationship at any time, they depart from this rule in cases dealing with restrictive employment covenants. *Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 945–46 (7th Cir. 1994). In those cases, there is "an irrebuttable presumption that if the employee was fired shortly after he signed the covenant the consideration for the covenant was illusory," rendering the contract unenforceable. *Id.* at 946. Defendants argue that Illinois courts apply a bright-line rule that employment for less than two years is inadequate consideration. Because Industrial Packaging fired Channell after one year of employment, defendants argue, the agreement is invalid.

Illinois appellate courts have suggested that two years of employment is sufficient consideration and have begun to apply a two-year bright-line requirement—at least where no additional consideration (such as bonuses or other benefits) is alleged. *See e.g. McInnis v. OAG Motorcycle Ventures, Inc.*, 2015 IL App (1st) 142644, ¶¶ 23, 32, 35, 38. The Illinois Supreme Court, however, has not embraced this bright-line rule. A federal court sitting in diversity must apply state substantive law as it believes the state Supreme Court would if it were hearing the issue, giving great weight to state appellate courts unless there are persuasive reasons to believe the highest court would rule differently. S*tate Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001).

My prediction is that the Illinois Supreme Court would reject the bright-line two-year rule in favor of a fact-specific approach. *See Bankers Life and Casualty Co.*

9

*v. Miller*, 2015 WL 515965, 14-cv-3165, *3–4 (N.D. Ill. Feb. 6, 2015); *see also Apex Physical Therapy, LLC v. Ball*, 2017 WL 3130241, 17-cv-00119-JPG-DGW, *2 (S.D. Ill. July 24, 2017) (collecting cases); *Stericycle, Inc. v. Simota*, 2017 WL 4742197, 16-cv-4782, *4–5 (N.D. Ill. Oct. 20, 2017). Though the Illinois Supreme Court has not decided this particular issue, it has stressed the importance of using a fact-specific approach in a similar context. In *Reliable Fire Equip. Co. v. Arredondo*, the Court rejected the rigid tests developed by the appellate courts to determine whether an employer has a legitimate business interest in imposing a restrictive covenant—an inquiry necessary to determine whether the covenant is reasonable. 2011 IL 111871 ¶¶ 40–43. While the factors the lower courts had used were relevant to the inquiry, the Court stressed the importance of considering "the specific facts and circumstances of the individual case." *Id*. ¶ 43. Because the Illinois appellate courts that have applied the two-year bright-line rule have not provided any persuasive reason to depart from this general principle, nor any justification as to why two years is a logical cutoff, it is doubtful that the Illinois Supreme Court would adopt their reasoning. Because defendants make no other argument concerning the validity of the agreement, at this stage, Industrial Packaging's allegations are sufficient to state a claim.

### C. Tortious Interference with Contract and Breach of the Duty of Loyalty

In Illinois, the elements of tortious interference with contract are: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's

10

intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *Melrose Commons LLC v. Selective Imports, Inc.*, 2016 IL App (1st) 143110-U, ¶ 72. To state a claim for breach of fiduciary duty of loyalty a plaintiff must allege: (1) that a fiduciary duty exists; (2) that it was breached; and (3) that the breach proximately caused the plaintiff's injury. *Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530, ¶ 69. In Illinois, employees owe fiduciary duties to their employers while they are employed, *id.*, but there is no post-employment duty that prevents an employee from competing with his former employer post-employment. *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992); *Veco Corp. v. Babcock*, 243 Ill.App.3d 153, 160 (1st Dist. 1993). Contractual obligations, however, may extend an employee's duties post-termination. *See Composite Marine Propellers*, 962 F.3d at 1265; *see also Integrated Genomics, Inc. v. Kyrpides*, 2008 WL 630605, 06-cv-6706, *10 (N.D. Ill. Mar. 4, 2008). In those cases, claims based on "breach of fiduciary duty stand or fall with those based on contract." *Composite Marine Propellers*, 962 F.2d at 1265.

Defendants' only arguments for dismissing Industrial Packaging's tortious interference and breach of loyalty claims are that because Channell was not subject to a valid contract, Industrial Packaging has failed to allege both claims. Because Industrial Packaging has adequately alleged the existence of a valid contract, defendants are not entitled to dismissal of either claim on these grounds.

### D. Preliminary Injunction

Finally, defendants move to dismiss Industrial Packaging's claim for a preliminary injunction. Though Industrial Packaging may be entitled to an injunction as a remedy should it prevail, an injunction is a not an independent cause of action. *See LaSalle Nat'l Bank v. Metro. Life Ins. Co.*, 18 F.3d 1371, 1376 (7th Cir. 1994). The "claim" for a preliminary injunction is dismissed, and understood instead to be a requested remedy.[5]

## IV. Conclusion

Defendants' motion to dismiss [18] is granted in part, denied in part. Plaintiff's DTSA and ITSA claims are dismissed without prejudice.[6]

ENTER:

                                                                            /s/ Manish S. Shah
                                                                            Manish S. Shah
                                                                            United States District Judge

Date: June 4, 2018

---

[5] I denied Industrial Packaging's separate motion for a preliminary injunction. *See* [35].

[6] It is not immediately apparent from the complaint whether there is complete diversity of the parties to support federal jurisdiction should plaintiff be unable to allege a claim under the DTSA. Assuming that any of Axis Packaging's member shareholders is, like Industrial Packaging, a citizen of South Carolina for diversity purposes, the supplemental state-law claims will be dismissed without prejudice to be pursued in state court.